1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  1990 North California Boulevard, Suite 940
   Walnut Creek, CA 94596
3  Telephone: (925) 300-4455
   Facsimile: (925) 407-2700
4  E-Mail: ltfisher@bursor.com

5
   **BURSOR & FISHER, P.A.**
6  Scott A. Bursor (State Bar No. 276006)
   888 Seventh Avenue
7  New York, NY 10019
   Telephone: (212) 989-9113
8  Facsimile: (212) 989-9163
   E-Mail: scott@bursor.com
9

10 *Attorneys for Plaintiffs*
   *[See additional counsel on signature page]*
11

12                   **UNITED STATES DISTRICT COURT**

13            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14

15 | EHDER SOTO, individually and on behalf of all   Case No. 5:15-cv-05082-BLF
   others similarly situated,

16                                                  Case No. 1:16-cv-01478-BLF
                          Plaintiff,
17                                                  **NOTICE OF MOTION AND MOTION FOR**
           v.                                       **PRELIMINARY APPROVAL OF CLASS**
18                                                  **ACTION SETTLEMENT**
   WILD PLANET FOODS, INC.,
19                                                  Date: May 11, 2017
                          Defendant.                Time: 9:00 a.m.
20                                                  Courtroom 3, 5th Floor

21 HENEY SHIHAD, an individual on behalf of         Judge: The Hon. Beth Labson Freeman
   himself and all others similarly situated,
22
                          Plaintiff,
23
           v.
24
   WILD PLANET FOODS, INC. and DOES 1
25 through 25, inclusive,

26                        Defendants.

27

28

---

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:15-CV-05082-BLF AND CASE NO. 1:16-CV-01478-BLF

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 11, 2017 at 9:00 a.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at San Jose Courthouse, Courtroom 3 - 5th Floor, 280 South 1st Street, San Jose, CA 95113, in the courtroom of the Honorable Beth Labson Freeman, Plaintiffs will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Stipulation for Class Action Settlement ("Settlement Agreement"), (ii) provisionally certify the Settlement Class[1] for the purposes of preliminary approval, designate Plaintiffs Soto and Shihad as the Class Representatives, and appoint Bursor & Fisher, P.A., Nathan & Associates, APC and Law Offices of Ross Cornell, APC as Class Counsel for the Settlement Class, (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time, and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declarations of L. Timothy Fisher and Daniel Rosenthal, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

### CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should preliminarily approve the proposed class action settlement pursuant to Fed. R. Civ. P. 23(e).

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement, filed concurrently herewith. *See* Fisher Decl. Ex. 1.

Dated: February 1, 2017

**BURSOR & FISHER, P.A.**

By:  /s/ L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone:  (619) 272-7014
Facsimile:  (619) 330-1819
E-Mail:  rnathan@nathanlawpractice.com

**LAW OFFICES OF ROSS CORNELL, APC**
Ross Cornell (State Bar No. 210413)
111 W. Ocean Blvd., Suite 400
Long Beach, CA 90802
Telephone:  (562) 612-1708
Facsimile:  (562) 394-9556
E-Mail:  ross.law@me.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

PAGE(S)

I.      INTRODUCTION ........................................................................................... 1

II.     PROCEDURAL BACKGROUND.................................................................. 3

        A.      Pleadings And Motions................................................................... 3

        B.      Discovery ......................................................................................... 4

III.    THE LEGAL STANDARD FOR PRELIMINARY APPROVAL........................ 4

IV.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND
        REASONABLE ............................................................................................ 6

        A.      Strength Of Plaintiffs' Case ............................................................ 6

        B.      Risk Of Continuing Litigation ........................................................ 7

        C.      Risk Of Maintaining Class Action Status ...................................... 8

        D.      The Extent Of Discovery And Status Of Proceedings................... 8

        E.      Experience And Views Of Counsel ................................................ 8

V.      THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT
        CLASS FOR THE PURPOSES OF PRELIMINARY APPROVAL ................... 9

        A.  The Class Satisfies Rule 23(a) ............................................................ 10

                1.  Numerosity.................................................................................. 10

                2.  Commonality............................................................................... 10

                3.  Typicality .................................................................................... 11

                4.  Adequacy .................................................................................... 12

        B.  The Class Satisfies Rule 23(b)(3)...................................................... 12

                1.  Common Questions of Law and Fact Predominate ............................. 13

                2.  A Class Action is the Superior Mechanism for Adjudicating
                    this Dispute ................................................................................. 13

VI.     THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE
        AND SHOULD BE APPROVED ...................................................................... 14

VII.    CONCLUSION............................................................................................ 17

1

# TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*Alaniz v. California Processors, Inc.*,
    73 F.R.D. 269 (N.D. Cal. 1976) .......................................................................... 4

5

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................... 9, 13, 14

6

7

*Apple Computer Sec. Litig.*,
    1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ...................................... 7

8

*Arnold v. United Artists Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) ......................................................................... 11

9

10

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................... 6

11

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................ 6

12

13

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
    2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....................................................... 7

14

*Dunk v. Ford Motor Company*,
    48 Cal. App. 4th 1794 (1996) ............................................................................... 5

15

16

*Fulford v. Logitech, Inc.*,
    2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010) ............................ 8

17

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................................................... 6

18

19

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982) .............................................................................................. 11

20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... passim

21

22

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................ 8

23

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................................................... 8

24

25

*In re Omnivision Techns., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 8

26

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .............................................................................. 5, 9

27

28

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .......................................................................... 4, 5

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................... 4, 5

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................... 5, 6

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) ..................................................................................................... 5

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................... 6, 7, 9

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ............................................................................... 10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................................ 10

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .................................................................................... 12

**RULES**

Fed. R. Civ. P. 23(a)(1) ....................................................................................................... 10

Fed. R. Civ. P. 23(a)(2) ....................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ....................................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ....................................................................................................... 12

Fed. R. Civ. P. 23(b) ........................................................................................................... 12

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................................. 14

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 14, 16

Fed. R. Civ. P. 23(c)(2)(B)(i) .............................................................................................. 15

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii) ...................................................................................... 15

Fed. R. Civ. P. 23(c)(2)(B)(ii) ............................................................................................. 15

Fed. R. Civ. P. 23(c)(2)(B)(iii) ............................................................................................ 15

Fed. R. Civ. P. 23(c)(2)(B)(iv) ............................................................................................ 15

Fed. R. Civ. P. 23(c)(2)(B)(v) ............................................................................................. 15

Fed. R. Civ. P. 23(c)(2)(B)(vi) ............................................................................................ 15

Fed. R. Civ. P. 23(c)(2)(B)(vii) ........................................................................................... 15

Fed. R. Civ. P. 23(c)(3) ................................................................................................ 15

**OTHER AUTHORITIES**

Newberg on Class Actions § 11.25 (1992) ................................................................. 5

William B. Rubenstein, Newberg on Class Actions § 12:35 (5th ed. 2014) .................................... 17

## I.   INTRODUCTION

Plaintiffs Ehder Soto and Heney Shihad ("Plaintiffs"), by and through their counsel, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

The Settlement Agreement states that Defendant Wild Planet Foods, Inc. (hereinafter, "WP") will pay $1.7 million into a Settlement Fund in cash for the settlement of all claims in this action. *See* Settlement Agreement ¶ 2.1, Fisher Decl. Ex. 1.  The Settlement Agreement defines the Settlement Class to include:

> All residents of the United States of America who, from November 5, 2011 to the date of the order granting preliminary approval of this Settlement, purchased any can of branded tuna produced by, for, or on behalf WP, including cans sold under the "Wild Planet" brand and the "Sustainable Seas" brand.

The Settlement Agreement includes a $29.00 per claim payout for Settlement Class Members, subject to pro rata dilution if the total amount of claims exceeds the available funds. Settlement Agreement ¶ 2.3(a), Fisher Decl. Ex. 1.  This is an excellent result for Settlement Class Members compared to their likely recovery should they prevail at trial.  That is, a recovery of $29 cash is a substantial portion of the maximum recovery any Settlement Class Member could reasonably expect, considering the relatively low cost of a can of tuna, only a fraction of which is alleged to be underfilled.  Fisher Decl. ¶¶ 6, 8.

As in any class action, the proposed Settlement is initially subject to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Plaintiffs now request that this Court enter an order in the form of the accompanying [Proposed] Order Preliminarily Approving Class Action Settlement, which will:

> (1)   Grant preliminary approval of the proposed Settlement;
>
> (2)   Provisionally certify the Settlement Class on a nationwide basis for the purposes of preliminary approval, designate Plaintiffs Soto and Shihad as the Class Representatives, and Bursor & Fisher, P.A., Nathan & Associates, APC and Law Offices of Ross Cornell, APC as Class Counsel for the Settlement Class;
>
> (3)   Establish procedures for giving notice to members of the Settlement Class;

(4)     Approve forms of notice to Settlement Class Members;

(5)     Mandate procedures and deadlines for exclusion requests and objections; and

(6)     Set a date, time and place for a final approval hearing.

The proposed Settlement is fair and reasonable and falls within the range of possible approval.  It is the product of extended arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case.  Class Counsel has conducted an extensive investigation into the facts and law relating to this matter and has engage in lengthy and detailed informal discovery to confirm critical facts regarding the scope of the class, the volume of product sales, the role of distributors, and the relative values of WP products sold during the class period. The investigation has included commissioning extensive pressed weight testing of WP tuna and reviewing dozens of pressed weight test reports in cooperation with qualified experts from the U.S. National Oceanic and Atmospheric Administration ("NOAA").

Additionally, Bursor & Fisher is singularly experienced with the issues particular to this action.  In *Hendricks v. StarKist Co*., No. 13-cv-00729-HSG (N.D. Cal.) (the "StarKist Action"), Bursor & Fisher successfully resolved virtually identical claims involving the alleged underfilling of StarKist-brand 5-ounce cans of tuna.  *See* July 23, 2015 Order Granting Preliminary Approval, Ex. 2 to Fisher Decl.; *see also* Bursor & Fisher Firm Resume, Ex. 3 to Fisher Decl.  In fact, Bursor & Fisher is the only law firm that has ever successfully litigated claims involving the underfilling of canned tuna to resolution.  Fisher Decl. at ¶ 3.  In the StarKist Action, the parties agreed to a settlement valued at $12 million and received over 2.4 million claims, the largest number of submitted claims from class members in the history of class actions.  *Id.*  Since entering into the settlement in the StarKist Action, Bursor & Fisher brought this action and two other additional cases concerning the alleged underfilling of canned tuna:  *Soto v. Safeway, Inc.,* 15-cv-05078-EMC (N.D. Cal.) (the "Safeway Action") and *Magier v. Trader Joe's Co., et al*, 16-cv-00043 (S.D.N.Y.) (the "Trader Joe's Action").  *Id.* at ¶ 4.  As a result of these efforts and the experience gained in litigating the StarKist Action, Safeway Action and Trader Joe's Action, Class Counsel is fully informed of the merits of the instant action and the proposed settlement, has substantial experience in consumer

litigation regarding underfilling of tuna cans and has, as a result, been efficient in substantially streamlining the fact gathering process so as to reach the proposed settlement promptly and without protracted litigation.  *Id.* at ¶¶ 3-5.

The proposed Settlement Class meets every element of Rule 23(a) and (b)(3).  The Settlement Class is so numerous that the joinder of all members is impracticable; there are questions of law or fact common to the proposed Settlement Class; the proposed Class Representatives' claims are typical of those of the Settlement Class; and the proposed Class Representatives will fairly and adequately protect the interests of the proposed Settlement Class.  In addition, common issues of law and fact predominate over any questions affecting only individual class members, and a class action as proposed here is superior to other available methods for the fair and efficient adjudication of the controversy.

## II.     PROCEDURAL BACKGROUND

### A.     Pleadings And Motions

On November 5, 2015, Plaintiff Soto filed his Class Action Complaint, Case No. 5:15-cv-05082-BLF (the "Soto Action").  On March 25, 2016, Plaintiff Shihad filed his Class Action Complaint, Case No. 1:16-cv-01478-BLF (the "Shihad Action").  The complaints in the Soto Action and the Shihad Action both alleged that WP cheated customers by shorting cans of tuna, under-filling them in violation of federal law.  Those allegations were based on pressed weight tests conducted in 2015 and 2016 by experts at NOAA, at the request of Class Counsel.  Plaintiffs assert claims on behalf of themselves and a nationwide class of purchasers of WP Products, for breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, violation of the California Consumers Legal Remedies Act ("CLRA"), violation of the California Unfair Competition Law ("UCL"), violation of the California False Advertising Law ("FAL"), negligent misrepresentation, and fraud.  Dkt. No. 36 at ¶¶ 17-70 (First Amended Class Action Complaint).

On April 5, 2016, the Court ordered the Soto Action and the Shihad Action to be related. Since that time, Class Counsel has engaged in lengthy substantive settlement discussions with counsel for WP, and has entered into a succession of stipulations continuing the time for WP to

1  respond to the Soto and Shihad complaints.

2         On December 23, 2016, the parties filed a written Stipulation for Class Action Settlement as

3  to the entirety of the Soto Action and the Shihad Action and now, accordingly, Plaintiffs hereby

4  move for conditional approval of the proposed Settlement.

5         **B.     Discovery**

6         Plaintiffs engaged in informal factual discovery over a period of several months with WP,

7  exchanging detailed data and analytics regarding WP's pressed weight testing, as well as nationwide

8  wholesale and retail sales data regarding WP tuna products sold under the "Wild Planet" and

9  "Sustainable Seas" brands.  Fisher Decl. at ¶ 5.  Plaintiffs also commissioned the services of NOAA

10 for a series of pressed weight tests over a period of several months, which included consultations

11 with experts from NOAA regarding the test data and its reliability.  *Id.*  Because Plaintiffs had the

12 benefit of Class Counsel's experience in the StarKist Action, the Trader Joe's Action and the

13 Safeway Action, Plaintiffs were able to substantially streamline the informal fact gathering process,

14 which, in light of WP's cooperation and voluntary production of necessary documentation and the

15 test data obtained from NOAA, resulted in an efficient resolution without protracted litigation.  *Id.*

16 **III.    THE LEGAL STANDARD FOR PRELIMINARY APPROVAL**

17        Approval of class action settlements involves a two-step process.  First, the Court must make

18 a preliminary determination whether the proposed settlement appears to be fair and is "within the

19 range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re*

20 *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. California*

21 *Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439

22 U.S. 837 (1978).  If so, notice can be sent to Settlement Class Members and the Court can schedule a

23 final approval hearing where a more in-depth review of the settlement terms will take place.  *See*

24 *Manual for Complex Litigation, 3d Edition*, § 30.41 at 236-38 (hereafter, the "Manual").

25        The purpose of preliminary approval is for the Court to determine whether the parties should

26 notify the putative class members of the proposed settlement and proceed with a fairness hearing.

27 *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be

28

disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See Dunk v. Ford Motor Company*, 48 Cal. App. 4th 1794, 1801 (1996).

Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)).

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, however, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate.  *See In re Syncor* 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

1   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

2   concerned." *Officers for Justice*, 688 F.2d at 625.

3        In evaluating preliminarily the adequacy of a proposed settlement, particular attention should

4   be paid to the process of settlement negotiations.  Here, the negotiations were conducted by

5   experienced class action counsel.  Thus, counsel's assessment and judgment are entitled to a

6   presumption of reasonableness, and the Court is entitled to rely heavily upon their opinion.  *Boyd v.*

7   *Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

8   **IV.    THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE**

9        Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only

10  after a hearing and on finding that it is fair, reasonable, and adequate."  When making this

11  determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) the

12  strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation;

13  (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in

14  settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the

15  experience and views of counsel.  *Hanlon*, 150 F.3d at 1026;[2] *Churchill Village, L.L.C. v. Gen.*

16  *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, the balance of these factors readily establishes that

17  the proposed settlement should be preliminarily approved.

18       **A.    Strength Of Plaintiffs' Case**

19       In determining the likelihood of a plaintiff's success on the merits of a class action, "the

20  district court's determination is nothing more than an amalgam of delicate balancing, gross

21  approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations

22  omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator

23  arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

24  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010)

25  (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

26

---

27  [2] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class
    members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more

28  germane to final approval, and will be addressed at the appropriate time.

1    Here, Plaintiffs' counsel engaged in lengthy arm's-length negotiations with WP's counsel,

2    and were thoroughly familiar with the applicable facts, legal theories, and defenses.  Although

3    Plaintiffs and their counsel believe that Plaintiffs' claims have merit, they also recognize that they

4    will face risks at class certification, summary judgment, and trial.  WP would no doubt present a

5    vigorous defense at trial, and there is no assurance that the class would prevail.  Thus, in the eyes of

6    Plaintiffs' counsel, the proposed Settlement provides the Settlement Class with an outstanding

7    opportunity to obtain significant relief at this early stage in the litigation.  The Settlement Agreement

8    also abrogates the risks that might prevent them from obtaining relief.

9        **B.    Risk Of Continuing Litigation**

10    As referenced above, proceeding in this litigation in the absence of settlement poses various

11    risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing

12    at trial.  Such considerations have been found to weigh heavily in favor of settlement.  *See*

13    *Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4

14    (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing

15    with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff

16    class.").  Even assuming that Plaintiffs were to survive summary judgment, they would face the risk

17    of establishing liability at trial in light of conflicting expert testimony between their own expert

18    witnesses and WP's expert witnesses.  In this "battle of experts," it is virtually impossible to predict

19    with any certainty which testimony would be credited, and ultimately, which expert version would

20    be accepted by the jury.  The experience of Plaintiffs' counsel has taught them that these

21    considerations can make the ultimate outcome of a trial highly uncertain.

22    Moreover, even if Plaintiffs were to prevail at trial, the class would face additional risks if

23    WP appeals or moves for a new trial.  For example, in *In re Apple Computer Sec. Litig.*, 1991 U.S.

24    Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an

25    extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100

26    million.  However, weeks later, the trial judge overturned the verdict, entering judgment

27    notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the

28

corporate defendant.  By settling, Plaintiffs and the Settlement Class avoid these risks, as well as the delays and risks of the appellate process.

### C.     Risk Of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining that class status through trial.  Even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  From their prior experience, Plaintiffs' counsel anticipates that WP would likely move for reconsideration, attempt to appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date.  Here, the Settlement Agreement eliminates these risks by ensuring Settlement Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery … at all."  *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

### D.     The Extent Of Discovery And Status Of Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Here, this matter has progressed through fact discovery more than sufficiently.  Accordingly, as discussed above, Plaintiffs' counsel has received, examined, and analyzed information, documents, and materials that enabled them to assess the likelihood of success on the merits.  These efforts include extensive consultations with experts from NOAA, reviewing and analyzing test results regarding hundreds of tuna cans, numerous interviews with members of the putative class, and significant legal research, analysis of documents and evidence provided by WP, and lengthy negotiations.

### E.     Experience And Views Of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

1   Deference to Plaintiffs' counsel's evaluation of the Settlement is appropriate because "[p]arties
2   represented by competent counsel are better positioned than courts to produce a settlement that fairly
3   reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In re Pac.*
4   *Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

5           Here, the Settlement was negotiated by counsel with extensive experience in consumer class
6   action litigation, including extensive experience litigating consumer claims regarding allegedly
7   underfilled canned tuna. *See* Fisher Decl. Ex. 3 (firm resume of Bursor & Fisher, P.A.). Based on
8   their collective experience, Class Counsel concluded that the Settlement Agreement provides
9   exceptional results for the Settlement Class while sparing Settlement Class Members from the
10  uncertainties of continued and protracted litigation.

11  **V.      THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS**
12  **        FOR THE PURPOSES OF PRELIMINARY APPROVAL**

13          The Ninth Circuit has recognized that certifying a settlement class to resolve consumer
14  lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed
15  settlement, a court must first determine whether the proposed settlement class satisfies the
16  requirements for class certification under Rule 23. In assessing those class certification
17  requirements, a court may properly consider that there will be no trial. *Amchem Prod., Inc. v.*
18  *Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class
19  certification, a district court need not inquire whether the case, if tried, would present intractable
20  management problems … for the proposal is that there be no trial.")

21          The Settlement Class consists of "All residents of the United States of America who, from
22  November 5, 2011 to the date of the order granting preliminary approval of this Settlement,
23  purchased any can of branded tuna produced by, for, or on behalf WP, including cans sold under the
24  'Wild Planet' brand and the 'Sustainable Seas' brand." Excluded from this definition are (a) the
25  Defendant and all of Defendant's past and present respective parents, subsidiaries, divisions,
26  affiliates, persons and entities directly or indirectly under its or their control in the past or in the
27  present, (b) Defendant's respective assignors, predecessors, successors, and assigns, (c) all past or
28  present partners, shareholders, managers, members, directors, officers, employees, agents, attorneys,

1   insurers, accountants, and representatives of any and all of the foregoing, and (d) all persons who file

2   a timely Request for Exclusion from the Settlement Class.  This Court has not yet certified this case

3   as a class action.  For the reasons below, the Class meets the requirements of Rule 23(a) and (b).  For

4   settlement purposes, the parties and their counsel request that this Court provisionally certify the

5   Settlement Class.

6   **A.      The Class Satisfies Rule 23(a)**

7   **1.      *Numerosity***

8   Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

9   impracticable." *See* Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity

10  is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."

11  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).  Here, the proposed Settlement Class

12  is comprised of millions of consumers who purchased the WP Products – a number that obviously

13  satisfies the numerosity requirement.  Accordingly, the proposed Settlement Class is so numerous

14  that joinder of their claims is impracticable.

15  **2.      *Commonality***

16  Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  *See*

17  Fed R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend

18  on a common contention," "capable of class-wide resolution … meaning that determination of its

19  truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

20  stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because the commonality

21  requirement may be satisfied by a single common issue, it is easily met.  H. Newberg & Conte, 1

22  Newberg on Class Actions § 3.10, at 3-50 (1992).

23  There are ample issues of both law and fact that are common to the members of the

24  Settlement Class.  Indeed, all of the Settlement Class Members' claims arise from a common nucleus

25  of facts and are based on the same legal theories.  By way of example, the Plaintiffs allege that the

26  Defendant (1) underfilled its tuna products, (2) falsely labeled its tuna products as containing "5 oz."

27  or "two 2.5 oz. servings" of tuna, and (3) regularly failed to comply with the minimum federal

28

pressed weight standards for 5 oz. cans of tuna.  Commonality is satisfied by the existence of these

common factual issues.  *See Arnold v. United Artists Theatre Circuit, Inc.* 158 F.R.D. 439, 448 (N.D.

Cal. 1994) (commonality requirement met by "the alleged existence of common … practices").

Second, Plaintiffs' claims are brought under legal theories common to the Settlement Class

as a whole.  Alleging a common legal theory alone is enough to establish commonality.  *See Hanlon*,

150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.  The

existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

of salient facts coupled with disparate legal remedies within the class.").  Here, all of the legal

theories asserted by Plaintiffs are common to all Settlement Class Members.  Given that there are no

issues of law identified by either party which would tend to affect only individual members of the

Settlement Class, common issues of law clearly predominate over individual ones.  Thus,

commonality is satisfied.

### 3.    *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims

… of the class."  *See* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative

claims are 'typical' if they are reasonably co-extensive with those of absent class members; they

need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.  In short, to meet the typicality

requirement, the representative Plaintiffs simply must demonstrate that the members of the

Settlement Class have the same or similar grievances.  *Gen. Tel. Co. of the Southwest v. Falcon*, 457

U.S. 147, 161 (1982).

The claims of the named Plaintiffs are typical of those of the Settlement Class.  Like those of

the Settlement Class, their claims arise out of the purchase of the Defendant's tuna products and the

alleged underfilling of those products.  Each named Plaintiff purchased several of Defendant's tuna

products and was directly impacted by the allegedly underfilled cans.  The named Plaintiffs have

precisely the same claims as the Settlement Class, and must satisfy the same elements of each of

their claims, as must other Settlement Class Members.  Supported by the same legal theories, the

named Plaintiffs and all Settlement Class Members share claims based on the same alleged course of

conduct.  The named Plaintiffs and all Settlement Class Members have been injured in the same

manner by this conduct. Therefore, Plaintiffs satisfy the typicality requirement.

>   4.   *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the

representative parties "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P.

23(a)(4).  A plaintiff will adequately represent the interests of the class where:  (1) plaintiffs and

their counsel do not have conflicts of interest with other class members, and (2) where plaintiffs and

their counsel prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*, 327

F.3d 938, 958 (9th Cir. 2003).  Moreover, adequacy is presumed where a fair settlement was

negotiated at arm's-length.  2 *Newberg on Class Actions, supra,* § 11.28, at 11-59.

Class Counsel have vigorously and competently pursued the Settlement Class Members'

claims.  The arm's-length settlement negotiations that took place over several months and the

detailed and comprehensive investigation they undertook demonstrate that Class Counsel adequately

represent the Settlement Class.  Moreover, the named Plaintiffs and Class Counsel have no conflicts

of interest with the Settlement Class.  Rather, the named Plaintiffs, like each absent Settlement Class

Member, have a strong interest in proving Defendant's course of conduct and in obtaining redress.

In pursuing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will

continue to advance and fully protect the common interests of all members of the Settlement Class.

Class Counsel has demonstrated an extensive experience and expertise in prosecuting complex class

actions, consumer class actions, and specifically class actions involving underfilled cans of tuna.

Class Counsel are active practitioners who are highly experienced in class action, product liability

and consumer fraud litigation.  *See* Fisher Decl. Ex. 3 (firm resume of Bursor & Fisher, P.A.).

Accordingly, Rule 23(a)(4) is satisfied.

**B.     The Class Satisfies Rule 23(b)(3)**

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the

three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research Inst.,*

*Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(b), a class action may be maintained if

1    "the court finds that the questions of law or fact common to the members of the class predominate

2    over any questions affecting only individual members, and that a class action is superior to other

3    available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P.

4    23(b)(3).  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the

5    parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

6                    1.       *Common Questions of Law and Fact Predominate*

7            The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because

8    questions common to the Settlement Class Members predominate over questions affecting only

9    individual Settlement Class Members.  Predominance exists "[w]hen common questions present a

10   significant aspect of the case and they can be resolved for all members of the class in a single

11   adjudication." *Hanlon*, 150 F.3d at 1022.  As the U.S. Supreme Court has explained, when

12   addressing the propriety of certification of a settlement class, courts take into account the fact that a

13   trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 620

14           In this case, common questions of law and fact exist and predominate over any individual

15   questions, including in addition to whether this Settlement is reasonable (*see Hanlon*, 150 F.3d at

16   1026-27), *inter alia*:  (1) whether Defendant's representations regarding the WP Products were false

17   and misleading or reasonably likely to deceive consumers; (2) whether the WP Products were

18   underfilled; (3) whether Defendant violated the CLRA, UCL or the FAL; (4) whether Defendant

19   breached an implied warranty; (5) whether Defendant had defrauded Plaintiffs and Settlement Class

20   Members; (6) whether the Defendant engaged in negligent misrepresentations regarding the subject

21   products, and (7) whether Plaintiffs and the Settlement Class have been injured by the wrongs

22   complained of, and if so, whether Plaintiffs and the Settlement Class are entitled to damages,

23   injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature

24   and amount of such relief.

25                    2.       *A Class Action is the Superior Mechanism for Adjudicating this Dispute*

26           The class mechanism is superior to other available means for the fair and efficient

27   adjudication of the claims of the Settlement Class.  Each individual Settlement Class Member may

28

lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").  Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## VI.   THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed R. Civ. P. 23(e)(1).

When a court is presented with a class-wide settlement prior to the certification stage, the class certification notice and notice of settlement may be combined in the same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows the settlement class members to decide whether to opt out, participate in the class, or object to the settlement.  *Id*.

---

The requirements for the content of class notices for (b)(3) classes are specified in Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  Each of the proposed forms of notice, including the Long Form and Short Form notices, meet all of these requirements, as detailed in the following table:

| Requirement | Long Form | Short Form |
|---|---|---|
| "The nature of the action."  Fed. R. Civ. P. 23(c)(2)(B)(i). | First introductory bullet; Q&A nos. 2 and 5. | Col. 1, ¶ 1. |
| "The definition of the class certified."  Fed. R. Civ. P. 23(c)(2)(B)(ii). | Second introductory bullet; Q&A no. 4. | Col. 1, ¶ 2. |
| "The class claims, issues, or defenses."  Fed. R. Civ. P. 23(c)(2)(B)(iii). | First introductory bullet; Q&A nos. 2, 5 and 6. | Col. 1, ¶ 1. |
| "That a class member may enter an appearance through an attorney if the member so desires."  Fed. R. Civ. P. 23(c)(2)(B)(iv). | Q&A nos. 16, 18, and19. | Col. 2, ¶ 2. |
| "That the court will exclude from the class any member who requests exclusion."  Q&A P. R. Civ. P. 23(c)(2)(B)(v). | Table of "Your Legal Rights and Options"; Q&A nos. 11, 12 and 13. | Col. 2, ¶ 1. |
| "The time and manner for requesting exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(vi). | Q&A no. 13. | Col. 2, ¶ 1. |
| "The binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(vii). | Table of "Your Legal Rights and Options"; Fourth introductory bullet; Q&A nos. 11, 12, and 24. | Col. 1, ¶ 5. |

In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii), the proposed notices are based on the Federal Judicial Center's ("FJC") model forms for notice of pendency of a class action.  FJC prepared these models at the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure.  *See* www.fjc.gov.  The FJC models are designed to illustrate how attorneys and judges might comply

with Fed. R. Civ. P. 23(c)(2)(B)'s requirement that class action notices "must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class action and how it might affect potential class members' rights.  *See* www.fjc.gov.  FJC explained its methodology for preparing these models as follows:

> We began this project by studying empirical research and commentary on the plain language drafting of legal documents.  We then tested several notices from recently closed class actions by presenting them to nonlawyers, asking them to point out any unclear terms, and testing their comprehension of various subjects.  Through this process, we identified areas where reader comprehension was low.  We found, for example, that nonlawyers were often confused at the outset by use of the terms "class" and "class action."  Combining information from the pilot test with principles gleaned from psycholinguistic research, we drafted preliminary illustrative class action notices and forms.  We then asked a lawyer-linguist to evaluate them for readability and redrafted the notices in light of his suggestions.

*Id.*  FJC then tested the redrafted model notices "before focus groups composed of ordinary citizens from diverse backgrounds" and also through surveys "[u]sing objective comprehension measures." *Id.*

Based on FJC's testing, the Plaintiffs and Class Counsel believe that each of the proposed class notices, which are very closely based on FJC models, with the format and content adopted almost verbatim in most instances, are accurate, balanced, and comprehensible.

These notices will be disseminated through a media plan developed by Kurtzman Carson Consultants ("KCC"), a firm with experience administering more than 2,000 settlements, which has been chosen by the parties as the Settlement Administrator.  *See* Settlement Agreement ¶ 1.21, Fisher Decl. Ex. 1; Rosenthal Decl. ¶ 5 ("Since 1984, KCC has administered more than 6,000 matters and distributed settlement payments totaling well over $20 billion in assets.").  KCC's proposed notice plan includes creation of a dedicated settlement website, an Internet banner ad campaign, and publication in the *San Francisco Examiner* that will reach "approximately 70% of likely Class Members."  *Id.* ¶ 6.  KCC advises that this notice plan is "consistent with the 70-95% reach guideline set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*," and that plans with similar reach percentages have "withstood appellate scrutiny, other expert critiques, as well as collateral review."  *Id.* ¶ 16.  KCC

1   estimates that its services in providing notice and claims administration will cost $350,000.00.  *See*

2   Settlement Agreement ¶ 4.5, Fisher Decl. ¶ 9.

3          This proposed method of giving notice was developed by KCC, in collaboration with Class

4   Counsel, with the objective of ensuring that as much of the Settlement Fund as possible will be

5   distributed to Settlement Class Members in the most simple and expedient manner.  *See, e.g.*,

6   William B. Rubenstein, Newberg on Class Actions § 12:35 (5th ed. 2014) ("[A] court's goal in

7   distributing class action damages is to get as much of the money to the class members in as simple a

8   manner as possible."); *see also id.* § 12:15 ("The goal of any distribution method is to get as much of

9   the available damages remedy to class members as possible and in as simple and expedient a manner

10  as possible.").  Class Counsel advised KCC that, with claim amounts at $29, it will take

11  approximately 28,000 Cash Claims to exhaust the Cash Settlement Fund, and asked KCC to design

12  the notice and claims process to accomplish this objective.  Fisher Decl. ¶ 9.

13  **VII.    CONCLUSION**

14         For the foregoing reasons, Plaintiffs respectfully request that the Court approve the

15  Settlement Agreement, provisionally certify the Settlement Class for the purposes of preliminary

16  approval, approve the proposed notice plan, and enter the [Proposed] Order Preliminarily Approving

17  Class Action Settlement, submitted herewith.

18

19  Dated: February 1, 2017                    **BURSOR & FISHER, P.A.**

20
                                              By:  _/s/ L. Timothy Fisher_
21
                                              L. Timothy Fisher (State Bar No. 191626)
22                                            1990 North California Boulevard, Suite 940
                                              Walnut Creek, CA 94596
23                                            Telephone:  (925) 300-4455
                                              Facsimile:  (925) 407-2700
24                                            E-Mail:  ltfisher@bursor.com

25                                            **BURSOR & FISHER, P.A.**
                                              Scott A. Bursor (State Bar No. 276006)
26                                            888 Seventh Avenue
                                              New York, NY 10019
27                                            Telephone: (212) 989-9113
                                              Facsimile: (212) 989-9163
28

---

1

E-Mail: scott@bursor.com

2

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)

3

600 W. Broadway, Suite 700
San Diego, California 92101

4

Telephone:  (619) 272-7014
Facsimile:  (619) 330-1819

5

E-Mail:  rnathan@nathanlawpractice.com

6

7

**LAW OFFICES OF ROSS CORNELL, APC**
Ross Cornell (State Bar No. 210413)

8

111 W. Ocean Blvd., Suite 400
Long Beach, CA 90802

9

Telephone:  (562) 612-1708
Facsimile:  (562) 394-9556

10

E-Mail:  ross.law@me.com

11

*Counsel for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28