UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EHDER SOTO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILD PLANET FOODS, INC.,<br><br>Defendant.<br><br>and<br><br>HENEY SHIHAD, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>WILD PLANET FOODS, INC., and DOES 1 through 25, inclusive,<br><br>Defendant. | Case No. 15-cv-05082-BLF<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND GRANTING PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES**<br><br>Case No. 16-cv-01478-BLF |

On September 14, 2017, the Court heard Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF 53) and Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Incentive Awards for Class Representatives (ECF 54). *See* Minute Entry, ECF 58. For the reasons stated on the record and those set forth below, the Court GRANTS the motion for final approval and GRANTS the motion for attorneys' fees, costs, and incentive awards.

I.  **BACKGROUND**

Plaintiffs Ehder Soto and Heney Shihad and class members were customers who purchased cans of tuna, which were allegedly under-filled, from Defendant Wild Planet Foods, Inc. The two named Plaintiffs Soto and Shihad separately filed their complaints against Defendant. On

November 5, 2015, Plaintiff Soto filed his class action, which is Case No. 15-cv-05082-BLF (the "Soto Action"). On March 25, 2016, Plaintiff Shihad filed his class action, which is Case No. 16-cv-01478 (the "Shihad Action"). The two actions were consolidated for all purposes. ECF 50. Plaintiffs Soto and Shihad ("Class Representatives") are represented by Bursor & Fisher, P.A., Nathan & Associates, APC, and Law Offices of Ross Cornell, APC (collectively, "Class Counsel").

The complaints allege that Defendant cheated customers who purchased its 5-ounce cans of tuna by under-filling those cans. Plaintiffs' allegations are based on press weight tests conducted in 2015 and 2016 by experts at the National Oceanic and Atmospheric Administration ("NOAA") at the request of Class Counsel. Plaintiffs assert breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, violation of the California Consumer Legal Remedies Act ("CLRA"), violation of the California Unfair Competition Law ("UCL"), violation of the California False Advertising Law ("FAL"), violation of the California Commercial Code § 2314, negligent misrepresentation, and fraud. Soto Action Compl., ECF 1; Shihad Action Compl., Case No. 16-cv-01478, Dkt. 1.

On December 23, 2016, the parties filed a stipulation for class action settlement. Settlement Agreement, ECF 44. The written Settlement Agreement contemplates the certification of "Settlement Class Members" defined as: "All residents of the United States of America who, from November 5, 2011 to the date of the order granting preliminary approval of this Settlement, purchased any can of branded tuna produced by, for, or on behalf WP, including cans sold under the 'Wild Planet' brand and the 'Sustainable Seas' brand." *Id.* ¶ 1.22. The Settlement Agreement provides that Defendant will establish a $1.7 million Settlement Fund to (1) pay valid claims for cash benefits submitted by Settlement Class Members, (2) cover administrative costs incurred by the Settlement Administrator not to exceed $350,000, (3) check distribution costs; (4) pay attorneys' fees, costs, and expenses, and (4) pay incentive awards to Class Representatives. *Id.* ¶ 2.1.

On May 11, 2017, the Court issued an order which: granted preliminary approval of the

class action settlement; preliminarily certified the settlement class; appointed Plaintiffs as Class Representatives; appointed Bursor & Fisher, P.A., Nathan & Associates, APC, and Law Offices of Ross Cornell, APC as Class Counsel; approved forms and methods of notice to the class; set a deadline of August 25, 2017 for objections; and set a hearing date of September 14, 2017 for Plaintiffs' motion for final approval of the class action settlement and for Plaintiffs' motion for attorneys' fees, costs, and incentive awards. *See* Order Granting Preliminary Approval of Class Settlement, ECF 52 (hereinafter, "Preliminary Approval Order"). No objections were filed.

On September 14, 2017, the Court heard Plaintiffs' motion for final approval and motion for attorneys' fees, costs, and incentive awards.

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

Federal Rules of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). The district court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Id.* at 818-19. "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by several factors articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors).

"Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

### B.  Rule 23(a) and (b) Requirements

A class action is maintainable only if it meets the four Rule 23(a) prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule . . . designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention[.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc.*, 521 U.S. at 614.  Rule 23(b)(3), relevant here, requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The "pertinent" matters to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

4

*Id.*

The Court previously found the putative class satisfied the requirements for numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and 23(b)(3). Preliminary Approval Order ¶¶ 5–6. The Court is unaware of any changes that would alter its analysis, and thus sees no reason to revisit the analysis of Rule 23. *See G.F. v. Contra Costa Cty.*, No. 16-3667, 2015 WL 4606078, at *11 (N.D. Cal. July 30, 2015).

### C. Notice was Adequate

The Court previously approved Plaintiffs' Notice Plan for providing notice to the class when it granted preliminary approval of the class action settlement. Preliminary Approval Order ¶¶ 10–11. The Notice Plan was designed by KCC Class Action Services LLC ("KCC"), the Settlement Administrator chosen by the parties. *Id.* ¶ 10. The Notice Plan involves a dedicated settlement website, social media campaign, and Internet banner advertisements. *Id.* The Court found that the contents of the proposed class notices, and the manner of their dissemination as described in the Notice Plan, were the best practicable notice under the circumstances and reasonably calculated, and meet the requirement of due process. *Id.*

Plaintiffs submitted a declaration of counsel stating that KCC promulgated notice pursuant to the Notice Plan. Nathan Decl. ¶ 32, ECF 53-1. Specifically, KCC caused the Settlement Notice to appear as a tabloid-size quarter page advertisement unit in the Classifieds section of the San Francisco Examiner on May 29, June 5, June 12, and June 19, 2017. *Id.* In addition, KCC caused 172 million internet banner impressions targeted at adults 18 years of age and older from May 26, 2017 through June 25, 2017. *Id.* In total, the internet banner effort delivered 183,667,666 impressions. *Id.* Also, by August 3, 2017, the designated website received 229,892 visits. *Id.* As a result, KCC has received approximately 100,000 claims[1] by the August 25, 2017 deadline to file claims. Nathan Suppl. Decl. ¶ 7, ECF 57. Most of the claims were submitted through the settlement website. *Id.* The approximately 100,000 received claims are substantially more than

---

[1] As of September 7, 2017, KCC has received 101,366 claims. Nathan Suppl. Decl. ¶ 7, ECF 57. Of those 101,366 claims, 99,312 were timely submitted and 2,054 were submitted after the August 25, 2017 deadline. *Id.*

1   the anticipated number of claims, which was expected to be around 28,000.  *See* Fisher Decl. in
2   Supp. of Mot. for Preliminary Approval ¶ 9, ECF 45-1 (expecting about 28,000 claims).  The
3   actual number of received claims shows that Plaintiffs' Notice Plan provided adequate notice to
4   the class members.  The overwhelming response also shows that class members had ample
5   opportunity to present their objections.  Thus, the Court finds the parties have sufficiently
6   provided notice to the Settlement Class Members.  *See Mullane v. Cent. Hanover Bank & Trust*
7   *Co.*, 339 U.S. 306, 314 (1950) (holding that notice must "apprise interested parties of the
8   pendency of the action and afford them an opportunity to present their objections").

### D. The Settlement is Fundamentally Fair, Adequate, and Reasonable

After evaluating the settlement as a whole, as guided by the *Hanlon* factors, the Court concludes that the settlement is fundamentally fair, adequate and reasonable.

#### i. Strength of Plaintiffs' Case and Risk of Continuing Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Here, Plaintiffs acknowledge that despite the strength of their case, there could be substantial obstacles to overcoming dispositive motions and proving the merits in a case such as this.  Mot. for Final Approval 6, ECF 53 (citing Plaintiffs' Motion for Preliminary Approval 6–7, ECF 45).  Plaintiffs also note that Defendants would present a vigorous defense at trial in the absence of this settlement and thus there is no assurance that the class would prevail.  Plaintiffs' Motion for Preliminary Approval 7.  As such, the Court finds that these factors weigh in favor of settlement.

#### ii. Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice*, 688 F.2d at 628).  "In this regard, it is

well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

The Settlement Agreement represents a substantial benefit for the Class Members. Class Counsel's testing of Defendant's tuna cans with NOAA showed an average under-fill of tuna between 3.2% to 7%, resulting in damages of approximately 8 cents to 18 cents per can. Nathan Decl. ¶ 8. This yields an average damage of 13 cents per can. *Id.* On the other hand, the cash payment to Class Members under the parties' settlement is significantly higher. The total cash fund from the Settlement Agreement is $1.7 million. *Id.* ¶ 39. After subtracting administrative expenses, attorneys' fees and costs, and incentive awards, the total cash to be paid out to Class Members is $766,594.99. *Id.* As mentioned, KCC, the Settlement Administrator, has received about 100,000 claims. Nathan Suppl. Decl. ¶ 7. Thus, the payout per claim is approximately $7.67.[2] This award is reasonable, considering that the average damage has been calculated as 13 cents per can. In addition, there have been no objections to the settlement amount. Under these circumstances, the Court finds that this factor weighs in favor of approval.

### iii. Extent of Discovery

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp.*, 213 F.3d at 459 (citation omitted).

Here, Plaintiffs have conducted a thorough investigation into the facts of the class action. Class Counsel researched varieties of canned tuna and obtained test results from NOAA regarding Defendant's product. Nathan Decl. ¶¶ 6–7. Also, Plaintiffs and Defendant engaged in numerous exchanges of informal discovery. *Id.* ¶ 17. For example, Plaintiffs obtained Defendant's sales data to determine the scope of the litigation. *Id.* ¶¶ 13–14. These actions put Class Counsel in a strong position to evaluate their case and conclude that settlement was the best way forward. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000)

---

[2] The exact payment will be determined after KCC identifies the number of ineligible claims such as duplicate claims.

1  (class counsel's significant investigation and discovery and research supported that the plaintiffs
2  had sufficient information to make an informed decision about the settlement). This factor
3  therefore weighs in favor of approval.

####        iv.     Counsel's Experience

Plaintiffs' counsel have recommended approval of the settlement. Mot. for Final Approval 6. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each parties' expected outcome in litigation."). Here, Class Counsel have substantial experience litigating similar class actions. Nathan Decl. ¶¶ 17, 41, 42. In particular, Class Counsel have unique litigation experience with *Hendricks v. StarKist, et al.*, Case No. 13-cv-00729 (N.D. Cal. 2013) (the "Hendricks action"), which similarly involved canned tuna products. *See Id.* ¶ 16; Fisher Decl. ¶ 2, ECF 54-2. In light of Class Counsel's considerable experience and their belief that the settlement provides more than adequate benefits to Class Members, the Court finds that this factor weighs in favor of approval.

####        v.     Presence of a Governmental Participant

Because there is no governmental entity involved in this litigation, this factor is inapplicable.

####        vi.     Reaction of the Class

The deadline for Class Members to submit objections to the settlement or the fees and expenses motion or to request exclusion from the Settlement Class was on August 25, 2017. Preliminary Approval Order ¶¶ 12–13; Nathan Suppl. Decl. ¶¶ 5–6. No Class Member has filed an objection to the settlement or requested exclusion from the Settlement Class. Nathan Suppl. Decl. ¶¶ 5–6. Accordingly, this factor strongly favors final approval. *Cf. Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *Chun-Hoon*, 716 F. Supp. 2d at 852 (granting final approval of settlement where 16 out of 329 class

members (4.86%) requested exclusion).

### E. Conclusion

Based on the foregoing reasons, and after considering the record as a whole as guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, and the settlement is fair, adequate and reasonable.   Accordingly, Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

### A. Legal Standard

#### i. Attorneys' Fees

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth*, 654 F.3d at 942.

#### ii. Costs

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotations and citation omitted). To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-cv-5778, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-5778, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

**B.   Analysis**

**iii.   Attorneys' Fees**

Plaintiffs move the Court for $566,100 in attorneys' fees, representing one-third of the Settlement Fund. Mot. for Att'y Fees 1, ECF 54. Class Counsel argue that this award is reasonable because counsel expended more than 346 hours on this litigation on behalf of the class, which, at the current hourly billing rates, amounts to a lodestar value of $200,563. *Id.* at 2; Nathan Decl. in Support of Mot. for Att'y Fees ¶¶ 45–46, ECF 54-1; Fisher Decl. ¶¶ 11–12, ECF 54-2; Cornell Decl. ¶ 5, ECF 54-3. Thus, the fee award of 33.33%, or $566,100, would represent a multiplier of 2.8 over the base lodestar fee. Nathan Decl. in Support of Mot. for Att'y Fees ¶ 46. Class Counsel also argue that in light of the substantial litigation risk they undertook and the positive results they achieved, the amount of attorneys' fees expenses is reasonable. Mot. for Att'y Fees 6–7 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (an upward adjustment to the 25% benchmark is justified when class counsel achieves "exceptional results for the class")).

After careful review of Class Counsel's declarations and filings, the Court concludes that awarding $566,100 in attorneys' fees is reasonable in light of the hours expended litigating the case and the exceptional results. Indeed, Class Members will be well compensated given that they are expected to receive approximately $7.66 per claim, which provides full recovery for multiple purchases where the loss was calculated as 13 cents per can. Moreover, Class Counsel took significant financial risk in prosecuting this case given the little history in litigating consumer

claims for under-filled tuna cans.  The only other similar case that involved tuna cans is the *Hendricks* action, which took significant time and expenditures to resolve.  *See* Case No. 13-cv-00729 (N.D. Cal. 2013) (case involved litigation over three years and objectors); Mot. for Att'y Fees 6.  These circumstances support that Plaintiffs' requested amount of attorneys' fees is reasonable.  *Vizcaino*, 290 F.3d at 1048 (holding that exceptional results and risky litigation support an upward adjustment to the 25% benchmark rate).  Moreover, the award is within the range of fees awarded in other class actions.  *See, e.g.*, *Romero v. Prods. Dairy Foods, Inc.*, No. 05-0484, 2007 WL 3492841, at*4 (E.D. Cal. Nov. 14, 2007) (approving attorneys' fee award that was 33 percent of the settlement fund).

The Court has also crosschecked this award against the lodestar recovery.  Class Counsel expended more than 346 hours on this case for a total lodestar fee, at current billing rates, of $200,563.  Nathan Decl. in Support of Mot. for Att'y Fees ¶¶ 45–46; Fisher Decl. ¶¶ 11–12; Cornell Decl. ¶ 5.  A fee award of 33.33%, or $566,100, would represent a multiplier of 2.8 over the base lodestar fee.  This multiplier falls well within the accepted range in the Ninth Circuit, and thus the fee is reasonable.  *See, e.g.*, *In re Omnivision*, 559 F. Supp. 2d at 1048 (noting that courts have approved multipliers ranging between 1 and 4); *Vizcaino*, 290 F.3d at 1051 n.6 (noting that the majority of class action settlements approved had fee multipliers that ranged between 1.5 and 3).

Accordingly, Plaintiffs' motion for $566,100 in attorneys' fees is GRANTED.

### iv.   Costs

Plaintiffs are also seeking reimbursement of $7,305.01 in out-of-pocket attorneys' costs and expenses.  Mot. for Att'y Fees 16; Nathan Decl. in Support of Mot. for Att'y Fees ¶¶ 39, 48; Fisher Decl. ¶¶ 15–16; Cornell Decl. ¶¶ 6–8.  The expenses relate to court fees, copying fees, courier charges, legal research charges, telephone/facsimile fees, travel expenses, postage fees, court reporter fees, videographer fees, transcript costs, and other related expenses.  These expenses are necessary for litigation and the amounts are not unreasonable.  Accordingly, Plaintiffs' motion for $7,305.01 in attorneys' costs is GRANTED.

## IV. INCENTIVE AWARDS

### C. Legal Standard

Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (internal citation omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation and internal quotations and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

### D. Analysis

Plaintiffs request an incentive award of $5,000 each for Class Representatives Soto and Shihad. Mot. for Att'y Fees 16–17. Plaintiffs believe this award is reasonable in light of the contributions that Soto and Shihad have made on behalf of the class. *Id.* Class Counsel contend that these class representatives held regular meetings with counsel to receive updates on the progress of the case and to discuss strategy. Nathan Decl. in Support of Mot. for Att'y Fees ¶ 63. They assisted Class Counsel's pre-suit investigation and provided information on their purchases and use of Defendant's canned tuna, among other matters. *Id.* They also assisted in drafting the complaints and reviewed the drafts for accuracy. *Id.* As such, Soto and Shihad took significant time away from work and personal activities to initiate and litigate this action. *Id.* No one has objected to the proposed incentive awards.

To determine the reasonableness of a service award, courts consider the proportionality between the incentive award and the range of class members' settlement awards. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). In this Circuit, an award of $5,000 is presumptively reasonable. *See Harris v. Vector Marketing Corp.*, No. C-08-5198, 2012 WL

381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases). Thus, in light of the named Plaintiffs' service to the class, the Court finds that an incentive award of $5,000 each is reasonable. Accordingly, Plaintiffs' motion for an incentive award of $5000 each to Class Representatives Soto and Shihad is GRANTED.

## V. ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Court GRANTS final approval of the parties' proposed settlement, which is fair, adequate, and reasonable.
2. The Court GRANTS an award to Class Counsel of $566,100 in attorneys' fees and $7,305.01 in costs.
3. The Court GRANTS an incentive award of $5,000 each to Class Representatives Soto and Shihad.

**IT IS SO ORDERED.**

Dated:  November 27, 2017

_____
BETH LABSON FREEMAN
United States District Judge